o

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

|  |  |  |
|---|---|---|
| JOSE VILLALBA, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | Case No. 5:14-cv-17 |
| THE CITY OF LAREDO, et al., | § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Plaintiffs Jose Villalba and Yanet Lechuga have sued the City of Laredo and three of its police officers under 42 U.S.C. §1983, alleging that the officers used excessive force against Villalba and that they falsely arrested both Plaintiffs in violation of the Fourth and Fourteenth Amendments. (Dkt. 1.) Pending before the Court is the City of Laredo's Motion for Summary Judgment. (Dkt. 22.) Plaintiffs have responded. (Dkt. 28.)

## Background

The following facts are derived from the complaint, the motion for summary judgement, the evidence submitted with that motion[1], and Plaintiffs' response. On the evening of April 26,

---

[1] The evidence includes the police department internal investigation report, videos from Plaintiffs' home surveillance

2012, police officer Juan Leal was dispatched twice to the Plaintiffs' home in response to a loud noise complaint. When Officer Leal first arrived, Plaintiff Villalba was outside in his front yard watering his lawn and listening to music through his Suburban's radio. Officer Leal informed Plaintiff Villalba about the noise complaint. Villalba contends that his radio was not loud, blaming his neighbors for the noise because they were allegedly having a party. Officer Leal then left, but Villalba nonetheless lowered the radio's volume.

Approximately thirty minutes later, Officer Leal returned to Villalba's home, now accompanied by Officer Ernesto Chavez. What happened next was captured by video. As the officers parked in front of the Plaintiffs' house, Villalba was standing at the edge of his front driveway. Villalba's white Suburban was backed into his driveway, and he was standing by its front driver-side headlight. The video depicted Officer Chavez walking past Villalba toward the Suburban's driver-side door, which was open. Officer Chavez then reached into the Suburban to turn down the music. Villalba then turned around and began to walk toward Officer Chavez. Officer Leal stopped Villalba by grabbing him

---

system, deposition of Plaintiff Villalba, declaration of Acting Chief of Police Gilberto L. Navarro, Officer Juan Leal's answers to interrogatories, excerpts from the city policy manuals, and the officers' training records.

2/15

from behind, starting a physical altercation. Officer Chavez stepped away from the Suburban to help Officer Leal.

The three individuals wrestled to the ground. Once on the ground, Villalba's right arm appeared to rise up near Leal's head or arm.[2] Officer Leal then began to punch Villalba's face and head repeatedly. Officer Chavez was at Villalba's feet, pulling Villalba's legs while attempting to kneel down on them. Then it appears Officer Leal wrapped one of his arms around Villalba's neck. It then seems Officer Leal had Villalba in a choke hold and Officer Chavez had Villalba's legs restrained.[3] Plaintiff Lechuga, Villalba's wife, was standing a few feet away watching this incident unfold.

After about three minutes into the altercation, two other officers arrived at the scene. All four officers were now on top of Villalba. After about another minute, they lifted Villalba from the ground with his hands handcuffed behind his back. The officers took Villalba into custody. Moments later, the officers arrested Plaintiff Lechuga and placed her in a patrol car, though she was released after about fifteen minutes. Villalba's criminal charges were later dropped and his case was dismissed.

---

[2] During his deposition, Villalba was asked whether he attempted to punch the officer. He responded in the negative.
[3] Villalba testified that he "wasn't struggling with them" but only trying to get out of the choke hold so that he could "breathe."

Plaintiffs filed a written complaint about the incident with the Laredo Police Department. The police department conducted an investigation into the complaint. It requested the videos that recorded the incident, but Plaintiffs refused to provide them. The police department then requested written statements from the officers accused of misconduct. At the end of the investigation, the Acting Chief of Police issued a letter to Plaintiffs, concluding that "the facts and circumstances surrounding the incident did not clearly prove" the allegations and therefore could not be sustained.

The Plaintiffs thereafter filed this §1983 lawsuit against the City of Laredo and its three police officers involved in the incident. The Complaint alleges three causes of action. First, that the officers unlawfully arrested Plaintiffs, and that they used excessive force in doing so with respect to Villalba in violation of their Fourth Amendment rights. Second, that the officers engaged in conduct that "shocks the conscience" and "offends the community's sense of fair play and decency" in violation of Plaintiffs' Fourteenth Amendment rights. Third, it alleges several theories for municipal liability. The City of Laredo now moves for summary judgment, arguing it is not liable because the Plaintiffs cannot show that a policy, practice, or custom of the City was the cause behind the alleged violations.

The City also seeks summary dismissal of the Fourteenth Amendment claim.

## Summary Judgment Standard

Summary judgment is appropriate when, taking the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Vuncannon v. United States, 711 F.3d 536, 538 (5th Cir. 2013). The movant carries the "initial burden of showing there is no genuine issue of material fact." Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013). The nonmoving party is then required to identify specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim. Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014). In deciding a summary judgment motion, the Court must consider the evidence in the light most favorable to the non-movant, and any reasonable inferences are to be drawn in favor of that party. Transmaritime, 738 F.3d at 706.

## Discussion

A city cannot be liable for a §1983 claim under a theory of respondeat superior. Monell v. New York City Dep't of Soc. Servs., 98 S.Ct. 2018, 2036 (1978). Instead, a city can be liable only "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 2037-38. Such a policy can take two forms:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003).

### Failure to Train

Plaintiffs allege that the City is liable for its officers' use of excessive force and false arrest because it failed to properly train them. They observe that Officer Leal was a recent graduate of the police academy at the time the incident happened, and that his conduct is evidence of an inadequate training policy.

A municipality's failure to adequately train its employees can constitute a policy capable of subjecting a municipality to liability under §1983. City of Canton v. Harris, 109 S.Ct. 1197, 1200 (1989); see also World Wide St. Preachers Fellowship v. Town of Columbia, 591 F.3d 747, 756 (5th Cir. 2009). To succeed in a failure-to-train claim, a plaintiff must show: "(1) that

the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." Zarnow v. City of Wichita Falls, 614 F.3d 161, 170 (5th Cir. 2010). The Fifth Circuit has instructed that "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." Roberts v. City of Shreveport, 397 F.3d 287, 293 (5th Cir. 2005).

Here, Acting Chief Gilberto L. Navarro submitted a declaration stating that all Laredo police officers have met "the minimum training requirements of the Texas Commission on Law Enforcement Officers Standards and Education (TCLEOSE)" and that all officers "have received the state-mandated training program in the use of force and arrests at one time or another." He declared that all officers receive training on arrests and the use of force at the Laredo Regional Police Academy, and that they receive additional training on those subjects during their twelve-month probationary period after graduating from the Academy. The City attached the training records of the three officers who were involved in the incident. The records indicate that the officers have all taken classes on arrests, searches,

and seizures, and that Officer Chavez had taken a class on the use of force.

Plaintiffs do not satisfy the first prong of the failure-to-train standard. This prong requires them to specify how the training program is defective. Instead, Plaintiffs' whole argument appears to rely on the conduct of one person, namely the officer who was a recent graduate of the Academy. Holding the City liable for his conduct on this one occasion would be akin to respondeat superior.

The Fifth Circuit has instructed that compliance with state training requirements is "a factor counseling against a 'failure to train' finding." Zarnow, 614 F.3d at 171 (citing Conner v. Travis Cnty., 209 F.3d 794, 798 (5th Cir. 2000)); see also Sanders-Burns v. City of Plano, 594 F.3d 366, 381–82 (5th Cir. 2010) ("[W]hen officers have received training required by Texas law, the plaintiff must show that the legal minimum of training was inadequate."). The City produced evidence that the officers have satisfied the state training requirements under Texas law. Plaintiffs have not addressed this evidence. Accordingly, Plaintiffs have not raised a fact issue as to whether the City failed to adequately train its officers on arrests or the use of force.

8/15

### Ratification of Officers' Conduct

Plaintiffs allege that the City is liable under a ratification theory because Chief Navarro simply issued a letter claiming that his officers did nothing wrong.

A policymaker's ratification of a subordinate's misconduct may cause the municipality to be liable if the policymaker approves a subordinate's decision and the basis for it. Peterson v. City of Fort Worth, 588 F.3d 838, 848 (5th Cir. 2009). However, the Fifth Circuit has limited this theory to "extreme factual situations." Id.

The case here does not present an extreme factual situation. In Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), the Fifth Circuit found ratification where a group of police officers mistook a man for a fugitive, surrounded his truck, "poured" gunfire onto his truck, and killed him. Following this "catastrophic" event, the City policymaker failed to reprimand, discharge, or admit that any error occurred on behalf of its officers, and so the Fifth Circuit affirmed the finding of municipal liability. Id. at 171. Conversely, in Snyder v. Trepagnier, 142 F.3d 791 (5th Cir. 1998), the Fifth Circuit refused to find ratification where the Plaintiff was shot in the back by a police officer while fleeing on foot from police following a high-speed chase. This incident was insufficient for municipal liability despite arguments that the

City knew about the police misconduct and that it did nothing. Id. at 797-98. The Snyder Court noted that Grandstaff was affirmed on a highly peculiar set of facts, and that the facts in Snyder hardly rose to the level of the "extraordinary factual circumstances" presented in Grandstaff. In the instant case, the officers wrestled with and punched Villalba. It is no doubt that this was an unfortunate situation for Plaintiffs. However, the scenario was not nearly like that in Grandstaff. Thus, liability under a ratification theory is not established.

### Failure to Supervise or Discipline

In their complaint, Plaintiffs allege that the City inadequately supervises and disciplines its officers. Plaintiffs observe that no officer received any discipline after this incident.

A municipality's failure to supervise or discipline its employees can constitute a policy capable of subjecting it to liability under §1983. These claims are analyzed using the same framework applied in failure-to-train claims. Deville v. Marcantel, 567 F.3d 156, 171 (5th Cir. 2009) (citing Piotrowski v. City of Houston, 237 F.3d 567, 581 (5th Cir. 2001)). Thus, a plaintiff must show that (1) the City failed to supervise or discipline its employees; (2) that the failure to supervise or discipline amounted to deliberate indifference; and (3) that there is a direct causal link between the failure to supervise

or discipline and the alleged constitutional violation. See Lewis v. Pugh, 289 Fed. App'x. 767, 771-72 (5th Cir. 2008). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" James v. Harris Cnty., 577 F.3d 612, 617-18 (5th Cir. 2009).

Here, the City acknowledges that neither officer was disciplined, but it provided evidence that it demonstrated some supervision by conducting a thorough internal affairs investigation into the incident.

When Plaintiff Lechuga complained about the officers' actions to the police department, she was referred to the Office of Public Integrity ("OPI"). She and Villalba completed a "voluntary statement form" where they gave their account of the incident in writing. The OPI then issued a "notice of investigation" to the officers accused of misconduct. All three officers submitted their written account of the incident. The officers disputed the allegations and claimed that Villalba was resisting the officer's attempt to subdue him.

The police department watched a short video recording provided by the KGNS television station and it believed that the video showed Villalba throwing a punch at Officer Leal which indicated that Villalba was belligerent or combative. The KGNS

11/15

TV interview included statements from Officer Joe E. Baeza. He noted that the video depicted Villalba resisting the officers' attempts to subdue him, and that Villalba appeared to throw a punch at Officer Leal. The Department requested the remainder of the videos from the home surveillance system, but the Plaintiffs refused to provide them.

At the end of the internal investigation, Chief Navarro issued a letter to the Plaintiffs. His letter concluded that the "facts and circumstances surrounding the incident did not clearly prove" the allegations, and so they "cannot be sustained." Chief Navarro explained that a disposition of "Not Sustained" meant that there was "insufficient evidence either to prove or refute the allegations."

In response to this evidence, Plaintiffs again rely exclusively on the fact that the officers were not disciplined on this one occasion. They fail to explain how this lack of discipline amounts to deliberate indifference or how it meets the causation element. Further, they completely omit any discussion about the supervision and investigation procedures that were actually conducted here. Accordingly, Plaintiffs have failed to show that the City's supervision and discipline were wholly inadequate, warranting imposition of municipal liability.

### Custom of Excessive Force

Plaintiffs allege that the City has a custom of tolerating excessive force. In support, they point to one previous incident where an officer was found to have used excessive force.

A custom or pattern is "tantamount to official policy" when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy." Peterson, 588 F.3d at 850. Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." Id. A plaintiff must demonstrate "a pattern of abuse that transcends the error made in a single case." Id. at 850-51 (citations omitted).

Here, Plaintiffs are relying on one prior incident of excessive force to establish that the City had a "widespread," "well-settled" policy of tolerating excessive force. That is insufficient to establish a department-wide policy. Therefore, Plaintiffs fail to raise a fact issue as to a custom of excessive force.

### Fourteenth Amendment Claim

Plaintiffs allege that the officers' use of force and false arrest also violated their Fourteenth Amendment rights. In its motion for summary judgment, Defendant City argues that this

13/15

claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. In their response, Plaintiffs merely reiterate that the officers made the arrests without probable cause.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the[] claims." Cnty. of Sacramento v. Lewis, 118 S.Ct. 1708, 1714 (1998). Here, it is undisputed that the officers were dispatched to Plaintiffs' home to investigate a noise complaint. Also undisputed is that the officers' use of force happened in the course of arresting Villalba. These claims are properly analyzed under the Fourth Amendment "reasonableness" standard. Graham v. Connor, 109 S.Ct. 1865, 1871 (1989) (holding that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach). Accordingly, this claim against the City will be dismissed.

14/15

## Conclusion

For all the foregoing reasons, the Motion for Summary Judgment (Dkt.22) by the City of Laredo is GRANTED, and all claims against it shall be dismissed. Plaintiffs' claims against the three individual officers – Juan Leal, Ernest Chavez, and David Nieto – in their individual capacities remain. The case is now returned to Magistrate Judge J. Scott Hacker for handling all pretrial matters pending to prepare this case for trial.

DONE at Laredo, Texas, this 26th day of August, 2015.

_____
George P. Kazen
Senior United States District Judge